IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SONYA LYN BOWEN, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | 2:12-cv-2075-LSC |

MEMORANDUM OPINION

## I. Introduction

The plaintiff, Sonya Lyn Bowen, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB"). Ms. Bowen timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Bowen was thirty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision. She has a high school education and completed one year of community college. (Tr. at 45.) Her past work experiences include employment as

a veterinary assistant, a data entry clerk, and a parking lot attendant. (Tr. at 67-68.) Ms. Bowen claims that she became disabled on May 30, 2007, due to depression, anxiety, attention deficit hyperactivity disorder, personality disorder, and bipolar disorder. (Tr. at 46, 178.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20

C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Bowen meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 17.) He further determined that Ms. Bowen has not engaged in substantial gainful activity since the alleged onset of her

disability. (Tr. at 24.) According to the ALJ, Plaintiff's depression, attention deficit hyperactivity disorder, personality disorder, and bipolar disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ did not find Ms. Bowen's allegations to be totally credible, and he determined that she has the following residual functional capacity: she can "perform medium work which allows for work primarily with or around things, not the general public, occasional contact with co-workers and/or supervisors, and no production work." (Tr. at 28.)

According to the ALJ, Ms. Bowen is unable to perform any of her past relevant work, she is a "younger individual," and she has a "high school education" as those terms are defined by the regulations. (Tr. at 31.) He determined that because the plaintiff was "not disabled," transferability of job skills was not material. (Tr. at 31.) Even though the ALJ found that Plaintiff cannot perform the full range of medium work, he used Medical-Vocation Rule 203.28 and 203.29 as a framework for finding that there are a significant number of unskilled medium jobs in the national economy that she could perform, such as cleaner, hatchery worker, and linen clerk. (Tr. at 30-31.) The ALJ concluded his findings by stating that Plaintiff "was not under a

'disability,' as defined in the Social Security Act, at any time through the date of this decision." (Tr. at 32.)

## II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against

the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Ms. Bowen argues that the ALJ's decision should be reversed for two reasons. First, she believes that the ALJ gave improper weight to the various medical opinions of record. (Doc. 8 at 8.) Second, she believes that the ALJ failed to pose a hypothetical question to the vocational expert ("VE") that adequately described her limitations. (*Id*. at 12).

#### A.   Weight Given to Medical Opinions of Record

Plaintiff contends that the ALJ did not give proper weight to the opinion of Dr. Stone, her treating psychiatrist (*id*. at 8), and further that the ALJ erred by failing to recontact Dr. Stone for clarification about his opinion. (*Id*. at 10.) Additionally, the plaintiff contends that the ALJ improperly gave substantial weight to the opinions of

Dr. Rogers, an examining psychiatrist, and Dr. Estock, a non-examining psychiatrist. (*Id*. at 11.) The Court will address these arguments in order.

   *1)*  *Dr. Stone*

A treating psychiatrist's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "Good cause" for not giving a treating psychiatrist substantial weight exists when "(1) the treating psychiatrist's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating psychiatrist's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440). If the ALJ finds the evidence, including the treating psychiatrist's opinion, insufficient, then he may recontact the treating psychiatrist or other medical source, among other options. 20 C.F.R. § 404.1520b(c)(3). However, if the ALJ can make a decision based upon the evidence, he is not under an obligation to recontact the treating psychiatrist. *Id*; *see Osborn v. Barnhart*, 194 F. App'x 654, 669 (11th Cir. 2006).

The ALJ showed "good cause" for discounting Dr. Stone's opinions, stating the opinions were conclusory and unsupported by the doctor's own notes and records.

(Tr. at 28.) In an attorney-drafted supplemental questionnaire, Dr. Stone classified all of Ms. Bowen's mental impairments as either "marked" or "extreme." (Tr. at 299-300.) The ALJ accurately noted that Dr. Stone did not provide any explanations or support for these classifications. (Tr. at 28.) They were merely conclusory statements. Additionally, as the ALJ articulated, none of Dr. Stone's prior treatment notes indicate a "marked" or "extreme" impairment. (Tr. at 277-306.) Although Dr. Stone's treatment notes document Plaintiff's history of depression with suicidal thoughts, crying spells, anger, manic times, poor sleep, and anxiety, his descriptions of Plaintiff's mental limitations never rise to the level of "marked" or "extreme" or describe her as disabled. (*Id.*) In fact, Dr. Stone's most recent assessment, a Psychiatry Progress Note dated April 28, 2010, identifies Plaintiff as "stable." (Tr. at 305.) In the same assessment, Dr. Stone indicated that Plaintiff's recent depression was due primarily to someone stealing her medications, and Dr. Stone's treatment simply consisted of continuing her medications. (*Id.*) As the ALJ correctly noted, these inconsistencies between Dr. Stone's treatment notes and his opinion provide good cause for giving Dr. Stone's medical opinion less weight. In light of the record, the ALJ's decision that good cause existed is supported by substantial evidence.

      Plaintiff further argues that the ALJ should have recontacted Dr. Stone in order

to clarify his opinions. (Doc. 8 at 10.) An ALJ, however, is only required to recontact a psychiatrist when there is not enough evidence in the record to make a decision. 20 C.F.R. § 404.1520b(c)(3). Plaintiff's medical history and the opinions of Dr. Rogers and Dr. Estock, discussed below, provide substantial evidence for the ALJ to make a decision; therefore, the ALJ did not err by not recontacting Dr. Stone.

2) *Dr. Rogers and Dr. Estock*

To determine the weight given to a medical opinion, an ALJ must consider several factors, including the examining relationship, the treatment relationship, the evidence presented to support the opinion, the consistency of the opinion with other evidence, and the specialization of the medical professional. 20 C.F.R. § 404.1527(c). *See Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 832 (11th Cir. 2011) (stating that the ALJ will give more weight to the medical opinions of a source who has examined the plaintiff and opinions that are supported by medical signs and findings and are consistent with the overall "record as a whole"); *see also Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (stating that "the opinions of nonexamining, reviewing physicians . . . when contrary to those of the examining physicians are entitled to little weight, and standing alone do not constitute substantial evidence").

The ALJ's assignment of substantial weight to Dr. Rogers' opinion was proper.

The ALJ articulated the following considerations in determining the degree of weight to afford Dr. Rogers' opinion: 1.) Dr. Rogers was an examining psychiatrist; 2.) Dr. Rogers supported his opinion with medical signs and findings; and 3.) Dr. Rogers' opinion accounted for and was consistent with Plaintiff's overall medical record. (Tr. at 27-28.) Dr. Rogers examined Plaintiff in February of 2008, reviewed Plaintiff's medical history, and conducted a series of tests to determine Plaintiff's mental status. (Tr. at 252-56.) Dr. Rogers observed that Plaintiff was well-groomed and spoke normally. (Tr. at 254.) He also asked Plaintiff to perform certain tasks and answer certain questions in order to assess her "Sensorium and Cognition." (Tr. at 254-55.) The ALJ used his objective observations and the results from the tests and questions to support his opinion that Plaintiff's "mental impairment is moderate." (Tr. at 257.) Dr. Rogers also stated that he took into account the medical evidence of record indicating Plaintiff's mental impairments when making his opinion, and his diagnoses of depression and fatigue are consistent with previous diagnoses of Plaintiff. (Tr. at 255-56.) Accordingly, there is substantial evidence to support the ALJ's decision to assign substantial weight to Dr. Rogers' opinion.

  The ALJ did not articulate at length his considerations for giving Dr. Estock's opinion significant weight. He merely mentioned that his opinions "are supported by

the overall evidence." (Tr. at 28.) However, the Commissioner emphasizes that as the State agency psychological consultant, Dr. Estock specializes in conducting disability evaluations. (Doc. 9 at 10.) Additionally, Dr. Estock supported his evaluations by citing the same medical signs and findings used by Dr. Rogers, and Dr. Estock's opinions are consistent with Plaintiff's overall medical history. (Tr. at 257-75.) Dr. Estock did not examine Plaintiff, though, and he only reviewed her records in formulating his opinion. Although it is an error to reject the opinion of an examining psychiatrist based only on the opinion of a non-examining psychiatrist, the ALJ did not rely solely on Dr. Estock's opinion. (Tr. at 27-28.) The ALJ relied on both Dr. Rogers' and Dr. Estock's opinions in rejecting Dr. Stone's opinion, and the ALJ noted that Dr. Rogers' and Dr. Estock's opinions are both supported by the evidence. (*Id.*) The ALJ could have better articulated his reasons for giving Dr. Estock's opinion significant weight. However, because the ALJ also gave substantial weight to Dr. Rogers' opinion and because Dr. Estock's opinion is supported by the evidence, it was not an error to give Dr. Estock's opinion significant weight without a lengthy explanation.

B.  **Sufficiency of Hypothetical Question Posed to the Vocational Expert**

Plaintiff claims that the ALJ erred by not explicitly including Plaintiff's

"moderate to marked" difficulties in social functioning in the hypothetical posed to the VE. (Doc. 8 at 13.) "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The Eleventh Circuit has held that an ALJ must only explicitly account for limitations in concentration, persistence, and pace when medical evidence does not "demonstrate that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). However, this Court has not found any authority from the Eleventh Circuit holding that an ALJ must account for social functioning limitations in a like manner. In fact, with respect to social limitations, the Eleventh Circuit affirmed, in an unpublished opinion, an ALJ who did not explicitly mention a plaintiff's moderate social limitation but "took account of [the plaintiff's] moderate limitations in social functioning by asking the VE a hypothetical question that included the restriction that [plaintiff] was limited to jobs that involved only occasional interaction with the general public and coworkers." *Washington v. Soc. Sec. Admin.*, No. 12-14397, 2013 U.S. App. LEXIS 906, at *5-6.

The ALJ, in this case, properly accounted for Plaintiff's "moderate to marked"

limitations in social functioning. (Tr. at 25.) Similar to *Washington,* where the ALJ's hypothetical asked about jobs with limited interaction with the public and coworkers, the ALJ in this case posed only hypothetical questions that limited the VE to jobs "primarily . . . around things, not the public" and with "occasional contact . . . with coworkers." (Tr. at 68, 71.) Additionally, the ALJ posed hypothetical questions that limited the vocational expert to jobs with "no contact with co-workers," although the ALJ ultimately decided Plaintiff could have "occasional contact with co-workers and/or supervisors." (Tr. at 71, 28.) Because the ALJ limited his hypothetical questions to jobs with limited contact with the public and co-workers, the ALJ properly accounted for Plaintiff's "moderate to marked" limitations in social interaction.

However, even if moderate limitations in social interaction should be specifically mentioned in the absence of medical evidence—similar to limitations in concentration, persistence, and pace—there is medical evidence in the record demonstrating Plaintiff's ability to interact with a few co-workers. (Tr. at 261.) The court in *Winschel* stated that when medical evidence demonstrates the ability to engage in some simple routine activity despite a limitation in concentration, persistence, and pace, the ALJ is not required to explicitly include the limitation. *Winschel,* 631 F.3d

at 1180. Dr. Estock's Mental Residual Functional Capacity Assessment indicated that Plaintiff could have casual contact with the public and could work with a few familiar co-workers. (Tr. at 261.) The ALJ properly relied on this medical evidence in limiting his hypothetical questions to jobs with limited social contact, despite not explicitly mentioning Plaintiff's limitations in social interaction.

## IV. Conclusion

Upon review of the administrative record and considering Plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with applicable law. A separate order will be entered.

Done this <u>31st</u> day of <u>May 2013</u>.

/s/ L. Scott Coogler<br>
L. SCOTT COOGLER<br>
UNITED STATES DISTRICT JUDGE<br>
[170956]